## THE NIAGARA FIRE INSURANCE COMPANY
### v.
## ELIAS J. BROWN.

*Fire Insurance—Stipulation—Waiver by Local Agent—Estoppel.*

In an action on a policy of insurance issued upon a stock of goods, it is *held:* That the stipulation signed by the agent of the defendant and attached to the policy by him, regarding the proper and safe keeping of books of purchases and sales and inventories, might be waived by him; that the evidence sustains the finding of the court below that it was so waived; and that the defendant is estopped to claim a forfeiture for the failure of the plaintiff to comply with its conditions.

### [Opinion filed October 5, 1887.]

APPEAL from the Circuit Court of Franklin County; the Hon. DAVID J. BAKER, Judge, presiding.

In August, 1886, the appellant, by its agent at Benton, Illinois, issued to the appellee its policy of insurance upon his stock of goods in the sum of $1,450, and upon the store fixtures and furniture the sum of $50. On the night of November 8, 1886, the store was burned, together with its contents, and the appellant refusing to pay the loss, this action was brought to recover upon the policy. The defense interposed is that the insured did not comply with the stipulation attached to the policy by the agent of the company and signed by him regarding the proper and safe keeping of books of purchases, sales, inventories, etc., but allowed them to be consumed in the fire that burned the building. The stipulation so far as relied upon is as follows:

" It is a part of the consideration of this insurance, and it is expressly warranted, that the assured above named shall take an inventory of the stock above described at least once a year, and shall also keep books of account, in detail, showing all the purchases and sales of the same, and shall keep all inventories and books in a fire-proof safe, or other place secure

Niagara Fire Ins. Co. v. Brown.

from fire in said store, during the hours said store is closed for business, or this policy shall be void."

The appellee did not keep his books in such safe but the same were burned in the store.

In answer to this defense it is asserted that it was never the intention of the parties that this stipulation should be regarded or complied with and was therefore waived. Upon a trial before the court, a jury being waived, judgment went for the plaintiff below and the company appealed.

Messrs. WILLIAM S. CANTRALL and THOMAS BATES, for appellant.

Mr. F. M. YOUNGBLOOD, for appellee.

PILLSBURY, J.   There was an intimation, rather than a direct charge, made upon the argument that appellee was responsible for the fire that destroyed his property, but upon examining the evidence we do not discover any foundation for it. While it is true that he was absent at the time of the fire, such absence is fully accounted for, as he was called to Benton to answer an attachment against him for contempt of court. The only point relied upon in the argument for a reversal of the judgment, is that the failure to keep his books in a fireproof safe or other secure place according to the condition of the policy avoids it.   To this point the appellee replies that it was not expected or intended that such condition should be complied with, and that its fulfillment was waived by the agent of the appellant.   It appears from the evidence that one J. F. Mason, the agent of appellant at Benton, called at the store of the appellee and solicited him to renew his insurance upon his goods, his policy in the same company for $2,500 for the preceding year having expired.

In the preceding policy there was no stipulation of the character here involved. Appellee informed Mason that he would carry his own risk in the future, but upon further persuasion he consented to take a policy for $1,500, and the one in question was written in pursuance of such arrangement.

When this policy was delivered to appellee there was attached to the margin by a common brass pin, a printed slip, containing what was called a three-fourths value clause and also the stipulation in question referring to the safe keeping of invoices, books, etc., which slip was signed by Mason alone as the agent of the company: Detaching this slip by withdrawing the pin would still leave the policy complete upon its face, and of the same character used in the preceding year in insuring the stock of goods in the same store. This slip being alone signed and attached by Mason in the manner stated, we have no doubt of his authority to detach it or withdraw it entirely, if he should so desire.

Whatever may have been his private instructions from the company regarding the attaching slips containing such stipulations to policies upon goods in country stores, it will not be disputed, that if he had delivered the policy to appellee without such, the underwriter could not have successfully defended the action because it was not attached as ordered.

If the agent had the power to bind the company by detaching it entirely, we think he could waive the performance of it and still leave it physically pinned to the policy, at least as he alone signed and attached it, and the policy made out and delivered by him without it would be valid. The apparent authority was such, that if he waived the performance of its conditions or gave the assured to understand that it would not be insisted upon and then took the premium and delivered the policy, the appellant would be estopped to claim a forfeiture upon the ground that the stipulation had not been complied with.

We have then only to inquire whether there is sufficient evidence in the record to uphold the finding of the court below; that a literal compliance with the stipulation did not forfeit the policy, as no questions of law arise upon the record for our consideration.

The only witnesses testifying upon this branch of the case are the plaintiff below and the agent, Mason.

He, the plaintiff, states that he told Mason he could not comply with the terms contained upon the slip; that he had no fire-proof safe, and that there were none in Mulkey Town,

where the store was located, and that he was informed by Mason that it was not required in country stores. He says he is not sure that this talk took place at the time or before the policy was taken out. Mason admits that this conversation about the safe occurred, but thinks it was when the first policy was taken out about a year before, when Brown told him he had no safe and he then told him that would not make any difference. He further says at the time he issued this policy he did not see any fire-proof safe, and thinks there was nothing said about it as they had talked about it before and he supposed Brown understood it. He thinks, however, that in the talk he had with Brown he told him how unsafe it was to leave books, etc., in the house to be consumed by the same fire that destroyed the building:—that when a man had no safe he had better take those things home with his bills.

He is evidently mistaken as to the time when this conversation took place, as at the time the first policy was issued the appellant had not adopted any such clauses to be attached to or put in its policies as those contained on this attached slip; neither did the policy then issued contain any such.

It is more reasonable to suppose that it occurred as stated by Brown, as the first knowledge he had of such requirements was when he first saw the policy and the attached conditions.

They would scarcely be talking about the necessity of keeping a fire-proof safe in which to keep the books or of taking them to the residence of the assured, when the insurer had not required any such action by the insured.

It further appears that Mason, the agent, went to Mulkey Town on the Saturday preceding the fire to insure another party, and in consequence of some things that had been said to him about this risk, he made it an object to go and look at the goods, examine the risk and and see if there was anything wrong about it, or, as he expresses it, "it was my particular object to see if all was right." He says that at this time the stock of goods was estimated by him to be worth as much as when the policy was issued, about $2,500.

At this time he knew that Brown had no safe in which to keep his books, invoices, etc., but although he went to Brown's store for the express purpose of seeing if everything was all

right about the risk, he seems to be fully satisfied that it was, from the fact that the stock insured had not depreciated in value, but far exceeded the amount of the insurance. If he had not waived the stipulation now insisted upon and he had considered the literal performance of it by the assured as material to the risk, it seems strange, indeed, that he had not inquired of Brown, who was then there, what care he took of the books, etc. It seems from such action that in this regard he only considered this stipulation material as furnishing the means of determining the amount of goods on hand at any given time, and having ascertained from personal inspection that the value of the goods so far exceeded the amount of the policy that no temptation could arise for Brown to destroy them, neither he nor his company had any further interest in such condition or stipulation. At this time, so far as appears from the record, he could easily have ascertained whether any of the material representations, conditions, warranties or stipulations contained in the policy were being violated by the assured, and when it is considered that he went to Brown's store for the purpose of ascertaining the present condition of the risk, and the action of the appellant through its agent in determining for itself the value of the goods in the store, we are not prepared to say that the court erred in holding that the ground of forfeiture of the policy now insisted upon was waived and the insurer liable.

The proof is amply sufficient to show that the goods destroyed so far exceeded the amount named in the policy that the plaintiff can not avail itself of the clause requiring it to pay only three-fourths of the value, and indeed, it is not contended that the testimony does so show, but because the value is not ascertained in the manner provided for, the insurer resists the claim.

So far as we can see the loss was an honest one and far exceeding the amount necessary to require the company to pay the face of the policy, and the court below having settled the facts in favor of the appellee upon evidence sufficient to sustain the finding, we affirm the judgment.

*Judgment affirmed.*